UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JENNIFER PARKER NICHOLSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BANGOR HISTORIC TRACK, INC., )<br>)<br>Defendant. ) | Civil no. 2:11-cv-00347-NT |

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Jennifer Parker Nicholson ("**Plaintiff**") worked at Bangor Historic Track, Inc.'s ("**Defendant**") off-track betting ("**OTB**") facility from June of 2008 through February of 2011. In the summer of 2010, the Plaintiff began suffering from migraine headaches and fibromyalgia, which caused her to take a leave of absence. Upon her return to work, the Plaintiff's relationship with her employer deteriorated, and her position was terminated effective February 25, 2011. This case comes before the Court on the Defendant's motion for summary judgment on the Plaintiff's complaint for disability discrimination under the Americans with Disabilities Act and Maine Human Rights Act (Count I) and violation of the Fair Labor Standards Act (Count II), and the Plaintiff's cross-motion for partial summary judgment on Count II. The Court **DENIES** both motions.

## FACTS

The Court begins with the undisputed facts. The Plaintiff started her employment with the Defendant in June of 2008 as an OTB Teller and was promoted to OTB Shift Leader in December of 2008. The Plaintiff then became an OTB Shift Supervisor in September of 2009, the job she held until her employment was terminated. The Plaintiff's promotion to Shift Supervisor increased her base rate of pay and changed her from an hourly employee to a salaried employee.

In June of 2010, the Plaintiff began suffering severe migraine headaches and fibromyalgia. These conditions caused her to take a medical leave of absence from July 23, 2010 through October 22, 2010. The Plaintiff recommenced work on October 23, 2010, but, after completing her shift on January 23, 2011, she never returned to work. At the end of her January 23, 2011 shift, the Defendant told the Plaintiff that her position as Shift Supervisor was being eliminated but that she could apply for the position of Shift Leader, the position she had previously held. This would have involved a reduction in responsibilities as well as base rate of pay. The Plaintiff did not apply for the Shift Leader position, which was to commence on February 23, 2011, nor did she ever return to work in her capacity as a Shift Supervisor. On February 25, 2011, the Plaintiff's employment was terminated.

In between these basic facts, the parties disagree both about what happened as well as the significance that might attach to events that did take place. The Plaintiff claims that the Defendant pressured her to return to work in October of 2010, before she was entirely ready to do so, and that once she returned to work her


supervisor began treating her unfairly with respect to shift scheduling, assigned tasks, and performance write-ups. She also claims that the Defendant's decision to eliminate her position was motivated by a discriminatory animus and that the stress of learning on January 23, 2011 that she was losing her position exacerbated her medical conditions to the point that she once again became unable to work. Finally, the Plaintiff claims that the Defendant failed to make reasonable accommodations to the Plaintiff's schedule that would have enabled her to keep working.

The Defendant claims that it eliminated the Plaintiff's Shift Supervisor position to reduce salary expenses and not out of any discriminatory motive. The Defendant also claims that it accommodated the Plaintiff's disability to the extent that she informed the Defendant of any restrictions, and also that some of the "accommodations" the Plaintiff sought were merely personal preferences.

In Count II, the Plaintiff claims that her position as Shift Supervisor, which the Defendant classified as exempt from the requirements of the Fair Labor Standards Act, was not exempt and that she is entitled to back pay for overtime worked during this period. The parties cross-move for summary judgment on this issue.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, the Court shall grant summary judgment if the movant shows "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." *Calero-Carezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986)).

"To demonstrate the existence of a genuine issue of material fact, plaintiffs must point to concrete, admissible evidence. Mere allegations, or conjecture unsupported in the record, are insufficient." *Rivera-Marcano v. Normeat Royal Dane Quality*, 998 F.2d 34, 37 (1st Cir. 1993) (citations omitted). "So long as the plaintiff's evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling." *Calero-Carezo*, 355 F.3d at 19. The "ground rules for summary judgment leave 'no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, no room for the judge to superimpose his own ideas of probability and likelihood (no matter how reasonable those ideas may be)' on the cold pages of the record." *Rodriguez v. Municipality of San Juan*, 659 F.3d 168, 175 (1st Cir. 2011) (quoting *Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987)).

The test is whether, as to each essential element, there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 249. The Court construes the record in the light most favorable to the nonmovant and resolves all reasonable inferences in the party's

favor. *See Sensing v. Outback Steakhouse of Florida, LLC*, 575 F.3d 145, 153 (1st Cir. 2009).

## DISCUSSION

**I.  ADA/MHRA Claims**

In Count I of the Complaint, the Plaintiff claims that the Defendant violated the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 – 12213, and the Maine Human Rights Act (MHRA), 5 M.R.S.A. § 4553-A. Section 12112 of the ADA states: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. Section 4572 of the MHRA provides: "A covered entity may not discriminate against a qualified individual with a disability because of the disability of the individual in regard to . . . advancement or discharge of employees." 5 M.R.S.A. § 4572(2). The Plaintiff's claims under the MHRA are analyzed consistently with the ADA. *Soileau v. Guilford of Maine, Inc.*, 928 F. Supp. 37, 45 (D. Me. 1996).

The Plaintiff claims that the Defendant violated the ADA/MHRA in three ways: (1) by eliminating her position at least in part because of her disability; (2) by failing to accommodate the Plaintiff's disability during the term of her employment; and (3) by retaliating against the Plaintiff when she expressed concerns that her requests for accommodation were not being honored.

### A. Disability Discrimination

The Plaintiff's discrimination claims require a showing that: (1) the Plaintiff suffers from a disability as defined by the ADA/MHRA; (2) the Plaintiff is an otherwise qualified individual, meaning that she is able notwithstanding her disability to perform the essential functions of her job with or without reasonable accommodation; and (3) the Defendant was aware of the Plaintiff's disability at the relevant time and adversely treated the Plaintiff based in whole or in part on her disability. *See Sensing,* 575 F.3d at 154; *Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 104 (1st Cir. 2005).

Once the Plaintiff makes out a prima facie case on these grounds, the burden then shifts to the Defendant to provide a legitimate, non-discriminatory reason for its actions. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973); *Tobin*, 433 F.3d at 104-05. If the Defendant produces a legitimate reason for its decision, the burden shifts back to the Plaintiff to show that the motive was discriminatory. *See id.* Thus, the Plaintiff bears the ultimate burden to create a plausible inference that the employer had a discriminatory motive. *See id.*

The parties do not dispute that the Plaintiff's fibromyalgia and migraine headaches are considered a disability within the meaning of the ADA and the MHRA or that the Defendant was aware of the Plaintiff's conditions. The Defendant does claim, however, that the Plaintiff was incapable of performing the essential functions of her job either with or without reasonable accommodation when it took adverse employment action against her, and that she was thus not an otherwise

6

qualified individual under the ADA or MHRA. The Defendant also maintains that there are no facts to support the Plaintiff's claim that the Defendant took adverse employment action against her on the basis of her disability.

> *1. The Plaintiff's Ability to Perform Essential Functions of her Job With or Without Reasonable Accommodations*

The Defendant claims that the Plaintiff was not an otherwise qualified individual under the ADA and MHRA because her employment was terminated on February 25, 2011, and as of that date the Plaintiff was unable to work in any capacity. *See Valle-Arce v. Puerto Rico Ports Auth.,* 651 F.3d 190, 200 (1st Cir. 2011); *Ríos-Jiménez v. Principi,* 520 F.3d 31, 42 (1st Cir. 2008) ("At the risk of stating the obvious, attendance is an essential function of any job").

The Plaintiff contends, however, that she was informed that her position as a Shift Supervisor was being eliminated on January 23, 2011. On this date, the Plaintiff worked a full shift and was then brought in to discuss the elimination of her position. Although the Plaintiff never did return to work following this discussion, the fact remains that she had been working when the discussion took place and she had no plans to take any additional leave. The Defendant's argument that it took no adverse employment action until her employment was actually terminated in February ignores the reality that the Defendant made a decision to eliminate the Plaintiff's position and communicated that decision to the Plaintiff on January 23, 2011. *See Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 805 (1999) (subsequent claims of total disability to the Social Security Administration do not invalidate a plaintiff's ADA claim that she was otherwise qualified because

7

they "may not reflect an individual's capacities at the time of the relevant employment decision"). The Plaintiff has thus established a prima facie case that she was an otherwise qualified individual within the meaning of the ADA and MHRA.

Furthermore, the fact that the Plaintiff was unable to work on February 25, 2011 is not fatal to her claim. The First Circuit has endorsed the idea that an employer cannot avoid liability under the ADA if a plaintiff's inability to work is caused by the employer's conduct. *Valle-Arce,* 651 F.3d at 200 (genuine issue of material fact existed as to whether supervisor's haranguing plaintiff about work absences caused her to be unable to perform the essential functions of her job); *D'Aprile v. Fleet Servs. Corp.,* 92 F.3d 1, 5 (1st Cir. 1996) (reversing district court's grant of summary judgment where plaintiff asserted that she would have been able to continue her employment were it not for the hostile and non-cooperative response of her supervisers to her request for a modified schedule). The Defendant contends that there is no admissible evidence that the Plaintiff's inability to work was caused by its conduct. The Plaintiff cites to her own affidavit for her assertion that she experienced a strong emotional reaction that affected her mental health which led her doctor to take her out of work. *See* Plaintiff's Statement of Additional Facts ¶ 151 (ECF No. 43). The Defendant denies this and points to office notes taken by the Plaintiff's primary care physician, a nurse practitioner, in connection with a January 25, 2011 appointment with the Plaintiff. The nurse issued a no-work notice following this appointment, but her notes relating to the visit did not mention

8

anything about the January 23, 2011 conversation. The Court finds that the Plaintiff's assertions, in addition to evidence that her medical provider issued a no-work order just two days after she received the news that her job was being eliminated, is minimally sufficient to raise a genuine issue of material fact as to the reason for her inability to work.

### 2. Adverse Employment Action Based on the Plaintiff's Disability

The Defendant asserts a non-discriminatory reason for eliminating the Plaintiff's position, specifically that it was a cost-cutting measure. The Plaintiff counters that the cost-cutting justification is pretextual. She points out that her position was the only one eliminated and that it was replaced by a new Shift Leader position, which casts doubt on any cost-saving rationale.[1] She also notes that the Defendant has not introduced any documentary evidence to support its cost-cutting rationale. *See Collazo v. Bristol-Myers Squibb Mfg., Inc.*, 617 F.3d 39, 51 (1st Cir. 2010). The Defendant's lack of documentation to support its claimed reason for eliminating the Plaintiff's position, along with the questionable savings to be realized by replacing a Shift Supervisor with a Shift Leader, call into question the Defendant's asserted reason for eliminating the Plaintiff's position.

The Plaintiff also asserts that the Defendant exhibited discriminatory animus toward her by purposely scheduling her for undesirable shifts and unfairly

---

[1] In 2009, when the Plaintiff first became a Shift Supervisor, the difference in base rate of pay between a Shift Leader and Shift Supervisor was $2,120 per year, but the Plaintiff was salaried as a Shift Supervisor and thus not eligible for overtime pay. If the Plaintiff had averaged a few hours of overtime per week, the "savings" in the reduced rate of base pay apparently would have been eliminated by overtime payments.

writing her up for poor performance. The Defendant attempts to defend its actions, but it is evident that the parties simply disagree on these facts. The Plaintiff's testimony is sufficient to create a triable issue of fact regarding the Defendant's discriminatory animus toward her. The First Circuit has repeatedly held that "'where a plaintiff . . . makes out a prima facie case and the issue becomes whether the employer's stated nondiscriminatory reason is a pretext for discrimination, courts must be "particularly cautious about granting the employer's motion for summary judgment."'" *Kelley v. Corr. Med. Serv., Inc.*, No. 11-2246, 2013 WL 450560 at *15 (1st Cir., Feb. 6, 2013) (quoting *Hodgens v. Gen. Dynamics. Corp.*, 144 F.3d 151, 167 (1st Cir. 1998) (quoting *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 928 (1st Cir. 1983))).

### B. Failure to Accommodate

To survive a motion for summary judgment on a failure-to-accommodate claim, a plaintiff must establish a prima facie case that: (1) she is a qualified individual with a disability; (2) she works for an employer covered by the ADA; (3) the employer knew of the employee's limitations and did not reasonably accommodate them; and (4) failure to accommodate affected the terms, conditions, or privileges of the plaintiff's employment. *See Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 264 (1st Cir. 1999). The Defendant does not dispute the Plaintiff's disability, that it is a covered employer, or that it was aware of the Plaintiff's disability. The Defendant claims, however, that it provided reasonable accommodation to the Plaintiff.

In determining whether an employer has failed to provide reasonable accommodation for the Plaintiff's disability, the Court follows a two-step analysis outlined in *Reed v. LePage Bakeries, Inc.,* 244 F.3d 254 (1st Cir. 2001). *See Enica v. Principi*, 544 F.3d 328, 338 (1st Cir. 2008). "First, the employee must show 'not only that the proposed accommodation would enable her to perform the essential functions of her job, but also that, at least on the face of things, it is feasible for the employer under the circumstances.' Second, the employee must prove that her request was sufficiently direct and specific to put the employer on notice of the need for an accommodation." *Id.* (quoting *Reed,* 244 F.3d at 259).

The Plaintiff has met her summary judgment burden of establishing triable issues of fact on the *Reed* elements. According to notes provided by the Plaintiff's treating physicians, the Plaintiff could perform her job so long as she worked no more than 40 hours per week or 8 hours per shift. The Plaintiff requested that she not be scheduled to work Friday or Saturday night shifts, which sometimes required her to work until midnight or 1:00 a.m. The Plaintiff avers that there were other employees who could cover these late-night shifts, and the Defendant does not contest feasibility.

The Defendant argues that it provided the Plaintiff with any necessary accommodations by not scheduling the Plaintiff for shifts of over eight hours or for more than forty hours per week. However, a reasonable inference can be drawn for the Planitiff that shift leaders or supervisors required to work the Friday or Saturday closing shifts were expected to complete closing duties which added

11

anywhere from one-half to three hours to an eight-hour shift. Merely because the Defendant scheduled the Plaintiff for an eight-hour shift does not mean that it accommodated her with an eight-hour shift.[2]

The Defendant further argues that it was not required to relieve the Plaintiff from working late-night shifts because this was merely the Plaintiff's preference, and not a request for accommodation. It is true that the Plaintiff's treating physicians did not specifically limit her from working late-night shifts. However, the Plaintiff testified that she told her supervisor that she needed regular sleep at night to control her conditions, and that the Friday and Saturday night shifts interfered with her ability to get home in time to take the medications that enabled her to sleep. The Plaintiff also testified that these shifts regularly required her to work past 10:00 p.m., presumably the nominal end of the shift. A reasonable fact-finder could find, therefore, that the Plaintiff's request to be relieved of Friday and Saturday night shifts was an attempt to bring her hours within the limitations established by her treating physicians and to keep herself in a sufficient state of health to continue with her employment. Accordingly, summary judgment on the Plaintiff's failure to accommodate claim is improper.

C. Retaliation

The Plaintiff's retaliation claim requires the Plaintiff to show that: (1) she engaged in protected conduct; (2) she suffered an adverse employment action; and

---

[2] The Plaintiff failed to provide the starting time of the closing shifts, so the record is not clear as to how many hours the Plaintiff worked during a closing shift that lasted until 1:00 AM. However, taking all inferences in the Plaintiff's favor, the record is minimally sufficient to establish a genuine issue on this point.

(3) there was a causal connection between the protected conduct and the adverse employment action. *Kelley*, 2013 WL 450560 at *14 (citing *Calero-Cerezo,* 355 F.3d at 25).

"Requesting an accommodation is protected conduct under the ADA's retaliation provision." *Kelley*, 2013 WL 450560 at *14. The Plaintiff asserts that her relationship with the Defendant and specifically with her supervisor deteriorated after she took a leave of absence from work in July of 2010. She asserts that, after she returned to work on October 23, 2010, she requested that she not be scheduled for Friday or Saturday night closing shifts, but that this request was not honored. The Plaintiff also asserts that she spoke with human resources about working too many hours. The Plaintiff has established a triable issue of fact regarding whether she engaged in protected conduct.

As discussed above, the Plaintiff suffered an adverse employment action when she was informed on January 23, 2011 that her position was being eliminated. The Plaintiff has established a sufficient factual predicate for a reasonable fact finder to conclude that there was a causal connection between the elimination of the Plaintiff's salaried position and the Plaintiff's requests to limit her hours. The Plaintiff was employed for a total of thirteen weeks between October 23, 2010, when she came back to work from leave, and January 23, 2011, when she was told her position as a Shift Supervisor was being eliminated. During that time, the Plaintiff spoke several times with her supervisor about limiting her hours and about not working late-night shifts, and she talked to human resources about

limiting her hours as well. A reasonable fact-finder could find that the Defendant's decision to eliminate the Plaintiff's salaried position and to propose instead that she apply for an hourly position at a lower rate of pay was in retaliation for her requests to limit her work hours and shifts.

## II. Violation of the Fair Labor Standards Act

The Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201-219, sets forth employment rules concerning minimum wages, maximum hours, and overtime pay. The Plaintiff claims that she was deprived of overtime pay in violation of the FLSA during her tenure as a Shift Supervisor. *See* 29 U.S.C. § 207(a)(1) ("no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed").

The Plaintiff and the Defendant both claim they are entitled to summary judgment on this claim. At the heart of the parties' dispute is the question of whether the Plaintiff's responsibilities as a Shift Supervisor fit within the definition of an "executive employee" exempt from FLSA requirements.[3] The Defendant bears the burden of establishing that the Plaintiff's job fell within the executive employee exemption. *See Cash v. Cycle Craft Co., Inc.*, 508 F.3d 680, 683 (1st Cir. 2007).

---

[3] The Plaintiff also asserts that the Defendant's failure to plead the Plaintiff's exempt status as an affirmative defense forecloses the Defendant from making this argument now. This goes nowhere in a case in which the Complaint alleges that the Defendant "deemed Plaintiff to be an exempt employee" in violation of the FLSA. Compl. ¶ 24 (ECF No. 1). The Defendant's answer, which admitted that it "placed Plaintiff in an exempt position" but denied any violation of the FLSA was sufficient to preserve this defense. Ans. ¶ 24 (ECF No. 5).

"Additionally, the remedial nature of the statute requires that its exemptions be narrowly construed against the employers seeking to assert them and limited to those establishments plainly and unmistakably within the exemptions' terms and spirit." *Id.* (internal citations omitted).

Under 29 C.F.R. § 541.100, an executive employee is defined as any employee:

(1) Compensated on a salary basis at a rate of not less than $455 per week . . .;
(2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
(3) Who customarily and regularly directs the work of two or more other employees; and
(4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

The parties dispute the material facts supporting three of the four factors. The Plaintiff appears to concede the third factor, that she customarily and regularly directed the work of two or more employees at the OTB facility.

With regard to the first factor, the Plaintiff claims that she was not paid on a salary basis because the Defendant docked her pay for less-than-full-day absences from work. *See* 29 C.F.R. § 541.602 (defining payment on a "salary basis" in relevant part as the regular receipt of "a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed . . ." but allowing for deductions from pay of a full day or more). The Defendant admits to

15

making such deductions but counters that they were made in "error." *See* Welch Depo. 44-45 (Doc. 27-5). It is not for the Court to weigh the credibility of the witnesses on this disputed material fact.

With regard to the second and fourth factors, neither of the parties has provided a definitive enough account of the Plaintiff's job for the Court to conclude as a matter of law that the Plaintiff either meets or does not meet the definition of an executive employee. With regard to the second factor, the Secretary of Labor's definition of "primary duty" includes the following example:

> assistant managers in a retail establishment who perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register. However, if such assistant managers are closely supervised and earn little more than the nonexempt employees, the assistant managers generally would not satisfy the primary duty requirement.

28 C.F.R. § 541.700(c). The record submitted by the parties indicates that the Plaintiff's duties as a Shift Supervisor closely resemble those of an assistant manager as described in this paragraph. She worked under the assistant manager of racing operations, and it was part of the Plaintiff's job to supervise employees at the OTB facility. The Plaintiff also ordered supplies for the kitchen and bar, opened and closed the facility, and had the ability to call staff meetings. However, the Plaintiff's pay as a Shift Supervisor was only about 8% higher than her base pay as a non-exempt Shift Leader. The Plaintiff also asserts that in many areas she was closely supervised and had no executive freedom. She was required to report to her

supervisor on a daily basis; she did not have authority to change the menu; and she was required to follow checklists for the kitchen, the bar, ordering, closing, opening, and for live racing. It is unclear, however, whether the Plaintiff's supervisor regularly worked at the OTB facility or whether the Plaintiff was considered the most senior employee in charge of that facility. *See Velazquez-Fernandez v. NCE Foods, Inc.*, 476 F.3d 6, 14 (1st Cir. 2007) (the plaintiff was clearly an exempt employee because he was the most senior employee at the warehouse and was in charge of the warehouse); *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 507 (6th Cir. 2007) (affirming summary judgment for the defendant on the plaintiff's FLSA claim where the plaintiff was "the most senior employee at her station; no other on-site employee was her equal" and where district manager visited the plaintiff's store "approximately once or twice a week").

Finally, the Plaintiff and the Defendant disagree over the extent of the Plaintiff's authority to discipline employees at the OTB facility, and over the extent of the Plaintiff's input with regard to hiring, firing, performance evaluation and promotion of employees at the facility.

It is for a fact-finder and not the Court to determine how the Plaintiff actually spent her work day, and the competing facts on these determinations preclude summary judgment for either the Plaintiff or the Defendant. *See Henry v. Quicken Loans, Inc.*, 698 F.3d 897, 901 (6th Cir. 2012) (conflicting evidence on the plaintiffs' primary duties made summary judgment improper).

17

## CONCLUSION

For the reasons recited above, the Defendant's Motion for Summary Judgment is **DENIED**. The Plaintiff's cross-motion for summary judgment on Count II of the Complaint is also **DENIED**.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 25th day of February, 2013.